## Chicago & Northwestern Railway Company v. John Marinan.

### Gen. No. 12,131.

1. ASSUMPTION OF RISK—*when instruction not erroneous in ignoring.* An instruction which tells the jury that if they find from the evidence that the defendant was guilty of the negligence charged in the declaration, or any count thereof, that the plaintiff was injured in consequence thereof, and that the plaintiff was himself in the exercise of reasonable care for his own safety, they should find the defendant guilty, is not erroneous in ignoring the question of assumed risk, where such question is one of the issues in the cause.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed January 30, 1906.

S. A. LYNDE, for appellant; LLOYD W. BOWERS, of counsel.

WILLIAM E. DEVER, for appellee.

· MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the defendant from a judgment for $6,800, recovered by appellee in the Circuit Court for personal injuries sustained by him while a switchman in the employ of the defendant, in attempting to get on to the front foot-board of an approaching engine with which he was working, while standing on the track in front of the engine.

The negligence alleged in the declaration was that the defendant negligently permitted the hand-rail on the engine, which plaintiff was compelled to take hold of in getting on and off the engine, to be placed so close to the boiler-head as to make it impossible for him in getting on the engine to grasp or take hold of said rail.

The foot-board was three or four inches above the rails. Three feet above the foot-board was the bumper-beam of the engine. To the middle of this beam was attached a draw-bar the base of which was twenty inches wide and that part of it which carried the links and projected beyond the edge of the foot-board was twelve inches wide. About eight inches above the bumper-beam was a hand-rail. The hand-rail and the foot-board each extended from outside to outside of the rails. The hand-rail was straight and was supported near each end by an upright iron rod fastened to the top of the bumper-beam. The boiler was placed so low that the lower part of the boiler-head, or smoke chamber, passed below the level of the hand-rail. The distance between the hand-rail and that part of the boiler-head in front of which it passed, was half an inch and the width of that part of the boiler in front of which the rail passed was twenty inches.

Plaintiff when he was injured was one of a switching crew of three, excluding the engineer and fireman. They were Silk, foreman or conductor; Raymond, working in the field, and plaintiff, who followed the engine and whose duty it was to work close to the engine so as to repeat signals from the

18

men in the field to the engineer. The field man and the man who worked close to the engine were subject to the orders and direction of the foreman. By arrangement among switchmen in the service of the defendant, when riding upon the front foot-board, the foreman stood on the right or engineer's side at the outer end of the foot-board, the man who followed the engine stood at his left between him and the draw-bar and the man in the field stood on the left or fireman's side.

The accident occurred about 6:35 in the morning of February 10, 1900. It was not fully light but there was light enough to permit objects to be seen at considerable distance. The engine with the crew on board went from the roundhouse to the south end of the Mayfair yards and stopped. Silk went forward intending to go to work in that end of the yard and plaintiff went with him to throw a switch. Silk found that they could not then work in that end of the yard and decided to go to the north end of the yard. He started back towards the engine, gave a signal to the engineer to come forward and called to the plaintiff to "Come on." The engine started forward slowly and Silk stepped on to the foot-board from outside the rails and stood at his usual place at the outer end of the foot-board on the right hand side. Plaintiff was but a few feet behind him and attempted to get upon the foot-board at the left of the foreman between him and the draw-bar. He stepped upon the foot-board, reached with his right hand to take hold of the hand-rail but his hand struck the draw-bar in front of the boiler--head where the space between the rail and the boiler-head was not sufficient to permit his hand with a mitten on it to pass between the rail and the boiler-head or to grasp or take hold of the rail, and by reason thereof he lost his balance and fell in front of the engine, was pushed by it some distance and severely injured.

Much importance is attached by counsel for appellant to the fact that a switchman could not stand on the foot-board in front of the boiler-head because the draw-bar projected beyond the edge of the foot-board. In their brief it is said:

"If this foot-board was so constructed that the men could have stood upon it through its entire width, it might well be claimed to have been negligent construction to place the hand-rail over the middle of the foot-board up close to the bottom of the boiler, but where as in the case here, they could not stand on this part of the foot-board, we are unable to see how it can be negligence to put the hand-rail over this part of the foot-board in this proximity to the boiler."

It was about two feet from the side of the draw-bar to the outer end of the foot-board. Silk stood at the outer end of the foot-board. The plaintiff attempted, in order to get into his proper, or at least usual place, to get upon the foot-board between Silk and the draw-bar and therefore necessarily attempted to get upon it alongside of the draw-bar. That part of the draw-bar which projected beyond the outer edge of the foot-board was 12 inches wide; that part of the hand-rail which was in front of the boiler-head was 20 inches long and extended each way 4 inches beyond that part of the draw-bar in front of which a man could not stand. Plaintiff faced the engine as he got upon the foot-board and Silk was to his left and the draw-bar to his right. Standing on the foot-board alongside of the draw-bar his body extended to the right, in front of that part of the hand-rail which was in front of the boiler-head four inches, and his right shoulder still farther. A man's shoulder projects three to four inches from his body. To grasp the rail with his right hand on the right hand side of the boiler (his left), plaintiff must pass his hand to the left across or in front of his body seven or eight inches and then his little finger would be next to the boiler and his thumb four inches farther to his left. To grasp the rail on the right hand side of the boiler he must extend his hand at least twelve inches beyond the line of his shoulder. A man grasping with his right hand a straight rail or bar directly in front of him, to steady himself or pull against, would be much more likely to grasp it on a line with his shoulder or a little to the right of that line, than to grasp it either eight inches to the left or twelve inches to the right of that line, and so a man not knowing but that he

could take hold of the hand-rail at any point in getting upon the engine as plaintiff got upon it, alongside of the draw-bar, would be much more likely to attempt to take hold of the hand-rail in front of the boiler than upon either side of it.

It is shown that in most switching engines the boiler is placed so high above the boiler-head that the hand-rail does not pass directly in front of it; that in some engines where the rail passes in front of the boiler-head that part of the rail in front of the head is curved outward away from the head, that in others it is placed above the outer edge of the bumper-beam while in this engine it was placed above the middle of the beam.

The construction was not intricate but simple and easily understood. Plaintiff testified that he did not know of the situation of the hand-rail and had not worked on the engine before the day of his injuries. He testified that he had worked one Sunday two or three weeks before in a crew with Leavitt as engineer and Leavitt testified that the engine used on that Sunday was the engine upon which plaintiff was injured. Plaintiff rode from the roundhouse to the place where he was injured in the cab and was injured the first time he attempted to get upon the engine, and there is no evidence to show that he then knew that the engine upon which he was working was the engine upon which he had worked one day, two or three weeks previously.

It was, we think, upon the evidence the province of the jury to say whether the defendant was guilty of negligence in furnishing to the switching crew of which plaintiff was a member the engine in question for use by them in switching, and whether the plaintiff was guilty of contributory negligence, and also whether the plaintiff assumed the risk of injury because of the location and condition of the hand-rail.

It is contended that the court erred in instructing the jury that if they found from the evidence that the defendant was guilty of the negligence charged in the declaration or any count thereof, that the plaintiff was injured in consequence

thereof and that plaintiff was himself in the exercise of reasonable care for his own safety, they should find. the defendant guilty, because such instruction ignores the issue of the assumption of risk by the plaintiff of injury because of the condition and situation of the hand-rail. This instruction was held proper in La Salle v. Kostka, 190 Ill., 130, which was a case involving the question of the assumption of risk and that decision was followed and approved in C. & A. R. R. Co. v. Howell, 208 Ill., 155, in which the same question was involved.

We find no reversible error in the. other rulings of the court upon instructions nor in the rulings upon questions of evidence.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*